UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KATRINA HOLLINS, for herself and as the parent
and natural guardian of her minor children          10 CV 1650 (LJS)(KNF)
A.C. and S.W.
                              Plaintiffs,
        -against-                                  **DECLARATION OF**
                                                     **COUNSEL PURSUANT**
THE CITY OF NEW YORK, a municipal corporation;   **TO FED. R. CIV. P. 56 (d)**
Karanlall (Neil) Brijbukhan, Shield # 660,
Jenny Ann Nelson, Shield # 4900,
Doug Williams, Shield # 5617,
George Wolfrom, Shield # 24893,
Jorge Morel, Shield # 21184,
Frank Chiodi, Shield # 2201,
Edwin Galan, Shield # 5983,
Kevin Canavan, Shield # 13062,
Claudio Ramirez, Shield # 3804,
Donald Boller,
Lieutenant Ryan,
Lori Pollock,
John and Jane Does individually and as Police
and Supervisory Officers of the New York City Police
Department, the identity and number of which is
presently unknown,
                                      Defendants.
------------------------------------------------------------------X

       GLENN A. WOLTHER, an attorney duly admitted to practice in and before the Courts of the State of New York, and being duly admitted to practice law in and before this Court, hereby declares under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1.     I am the attorney for Infant Plaintiff A.C. by her mother and natural guardian Katrina Hollins in the above captioned matter and as such am familiar with the facts stated herein. I submit this second Declaration pursuant to Federal Rule of Civil Procedure ("Rule") 56(d) concerning discovery that is unavailable pertinent to Plaintiff's opposition to the Defendants' motion for summary judgment and to place the relevant documents concerning that discovery in

1

the record.[1]

2. As set forth in detail below, Defendants failed to produce witnesses and documents relevant to Plaintiffs' direct action claims against both (a) the named individual NYPD Defendants in their personal capacity and (b) those NYPD Defendants who in addition to being sued in their personal capacity, are also sued in their supervisory capacities.[2] Additionally, Defendants failed to produce witnesses and documents relevant to Plaintiff's municipal liability ("*Monell*") claims against the City of New York ("NYC"). Finally, the portions of the missing *Monell* discovery, that relate to policies, guidelines, procedures, and training are also relevant to all the Individual NYPD Defendants' defenses of qualified immunity.

3. In sum, Defendants: (i) failed to produce five of the eleven named NYPD Defendants for deposition and none of the four also sued in their supervisory capacities, (ii) failed to produce any of the four no-party NYPD witnesses, (iii) appear to have failed to produce certain documents-that should exist- related to incident, (iv) failed to provide all documents related to policies, guidelines, procedures, and training regarding the incident, (v) failed to produce a Rule 30(b)(6) witness that could respond to questions concerning <u>prior incidents</u> within NYC on the *Monell* claims, and (f) failed to produce any documents regarding <u>prior incidents</u> on the *Monell* claim.

4. Plaintiff served the First Set of Interrogatories and Documents Demands on July 27, 2012

---

[1] Although submitting this Declaration in opposition to Defendants' motion for summary judgment Plaintiff, does not intend to waive any rights or suggest that the Defendants' actions have not resulted in prejudicing the case and respectfully reserves the right to seek appropriate remedy for any discovery violation, including but not limited to preclusion and adverse inference instructions to the Jury.

[2] The Defendants sued in their personal capacities are Brijbukhan, Nelson, Williams, Wolfrom, Morel, Chiodi, Galan, Canavan, Ramirez, Boller, Ryan, and Pollock. Collectively, all the individual Defendants are referred to as the ("NYPD Defendants"). A sub group of the NYPD Defendants are also sued in their supervisory capacities. They are Defendants Boller, Ryan, and Pollock.

("Plaintiff's First Demands"). Attached hereto as **Exhibit 9** are excerpts of Defendants' responses to Plaintiffs First Demands include Plaintiffs First Demands.[3] Plaintiff served the Second set of Document Demands, along with a Rule 30(b)(6) Notice on August 3, 2012. (Attached hereto as **Exhibit 10** are Excerpts from Plaintiff's Second Set of Document Demands.)

5. Plaintiff initially sought to obtain specific information on which members of the NYPD were in the Apartment, which were responsible for handcuffing and which were supervising. (See Exhibit 9, Interrogatories 1-8 at pp 3-8.) Defense Counsel, Mr. Karl J. Ashanti interposed objections. (*Id.*) Mr. Ashanti did however and provided a copy of the Search Warrant Execution Plan also called the Tactical Plan.[4] Mr. Ashanti represented to the Court that the interrogatory response was: "the best and most accurate information we have. . . obviously their depositions would bear that out" (11/13/12 Conf. Tr. at 9, *ellipses added*.) As such, the Court determined Plaintiff would be at liberty to inquire further at depositions. (*Id.* at 10.) Despite several requests Defendants have never verified their interrogatory responses.

6. On May 16, 2013 the Court ruled that Defendants were to make all witnesses, including a Rule 30(b)(6) witness available for depositions before the May 31, 2013 close of discovery. The Court also suggested that Plaintiff provide NYC an Amended 30(b)(6) Notice and Schedule of Documents and that documents was served on May 20. (Attached hereto as **Exhibit 11**, marked as Exhibit 1 at the Rule 30(b)(6) Deposition on July 2, 2013.)

7. Mr. Ashanti only produced five of the eleven individual NYPD Defendants on a two days for approximately a total of eight hours. The following NYPD Defendants were not produced: (i)Frank Chiodi, (ii) Edwin Galan, (iii) Kevin Canavan, (iv) Claudio Ramirez, (v) Donald

---

[3] Plaintiff's Exhibits 1-8 are attached to the undersigned's first Declaration at ECF docket No 83.)
[4] The Tactical plan is attached as **Exhibit G** to the Declaration of Karl J. Ashanti Dated June 21, 2013. So as to avoid unnecessary duplication, Defendants' **Exhibits A, B, and G** to the Ashanti Declaration are incorporated by reference herein and therefore not attached to this document.

Boller, (vi) Patrick Ryan, and (vii) Lori Pollock.

8.   Notably none of the four Supervisory NYPD Defendants: (i) Ramirez, (ii) Boller, (iii) Ryan, and (iv) Pollock) were produced. This is of particular significance because according to several Defense witnesses it is the ranking supervisor at the location that is responsible for making the decision as to how long and when to release an individual from hand cuffs. Attached hereto as Plaintiff's **Exhibit "12"** are excerpts from the transcript of the Rule 30(b)(6) deposition of Captain Gerald Corrigan ("30(b)(6) Dep.") taken on July 2, 2013, 58:22-59:8, 60:5-60:16. 24; *See also* Plaintiff's Br. at 8, listing the other witnesses.)

9.   Furthermore, none of the four non-party NYPD witnesses were not produced and failed to appear at their deposition. The non party NYPD witnesses are (i) Susie Peralta, (ii) Hugo Ortega, (iii) Sekou Bourne, (iv) George Solages. They are significant because they should have information regarding the timing of the events.

10.  Therefore having failed to appear at their depositions it is respectfully submitted that the NYPD Defendants Chiodi, Galan, Canavan, Ramirez, Boller, Ryan, and Pollock including those of which are sued both in the individual and supervisory capacities (Ramirez, Boller, Ryan, and Pollock) cannot assert any factual basis for summary judgment on any claim or defense.

11.  Plaintiff's document demands, relevant to this declaration, fall into thee categories. Within the first category are all the documents that were created concerning the incident described in the Second Amended Complaint. Within the second category are documents concerning policies, guidelines, procedures, and training. Within the third category are documents concerning to Plaintiff's *Monell* claims. There is some overlap between the second and third categories with respect to policies, guidelines, procedures, and training because they are both non-*Monell* in that they go to what procedures should have been followed, what

4

paperwork should have been created, and relatedly to the defenses of qualified immunity and also *Monell* with respect to what the NYC's policy and custom actually is. However another part of the third category of Plaintiff's requests regarding prior incidents are simply *Monell* demands.

12. Plaintiff contends that Defendants have failed to produce certain documents in all three categories. The parties hotly dispute this issue.[5] The undersigned's letter to the Court Attached dated May 28, 2013 sets forth the state of the discovery disputes up to that date but prior to any of the Defendants' depositions.

13. Despite Defense counsels' representations to the contrary, certain Defense witnesses confirmed the existence of various documents that have not be produced while additional other documents are believed to exist. Some of these documents relate to: (i) establishing the timeline of the detention; (ii) which members of the NYPD did what and when they did it; and (iii) the base line for any defense of qualified immunity. Specifically, Defendants failed to produce the Organized Control Bureau Manuel ("OCCB Manual") which includes at least two sections relating to search warrants, certain relevant portions relating to search warrants of the NYPD Patrol Guide ("Patrol Guide") or Interim Orders ("IO"), operations orders, or legal bureau memorandums, which are updates to the Patrol Guide, and also corresponding NYPD forms ("PD__") related to search warrants.

14. NYC's Rule 30(b)(6) witness Captain Corrigan is the Commanding Officer of Organized Crime Control Bureau ("OCCB") training unit. (30(b)(6) Dep. pp 45:24-46:10. The Rule 30(b)(6) witness confirmed that that there were at least two sections of the OCCB Manual that related to search warrants. (30(b)(6)Dep. pp 46:4-46:5; 49:17-52:11; 117:8-117:15.) NYC's Rule

---

[5] As the Court is well aware, and as set forth on the docket sheet, Plaintiff has made several applications regarding discovery in this action. For example, the Court issued discovery Orders on November 11, 2012, March 21-22, 2013, and May 16, 2013, June 11, 2013, and June 20, 2013.

30(b)(6) additionally confirmed that all of the Individual Defendants-who were OCCB members- would have received a Patrol Guide, updates in the form of IO's, operations orders and legal bureau memorandums. (*Id.* pp 85:9-86:6.) In addition, after a member of the NYPD enters the OCCB they receive additional training in search warrants. (*Id.*pp 46:18-46:25.) As part of OCCB, NYPD members are given, an OCCB manual. (*Id.* pp 49:17-49:22.) Once in OCCB, its members receive an OCCB continue to gets updates to the patrol guide and revisions to the OCCB manual. (*Id.* pp86:7-:86:11.) NYC's Rule 30(b)(6) witness did not know if the sections of the OCCB manual were mirrored in the Patrol Guide. 30(b)(6) Dep. 53:17-53:20. The Patrol Guide references various PD forms utilized with the NYPD. (*Id.* pp 111:4-112:6.)

15. NYC's Rule 30(b)(6) also confirmed that there was a policy regarding displaying of search warrant.(*Id.* pp 89:16-91:7.) Although, not provided by the Defendants' this policy is confirmed on the NYC Civilian Complaint Review Board ("CCRB") website. Attached hereto as Plaintiff's **Exhibit "13"** is an NYPD IO on "Search Warrant Execution." [6] The February 2004 IO references IO 41 from 2003 which presumptively also relates to search warrant executions. IO 41 was not produced by the Defendants. Also, in 2004 the NYPD adopted a system to track search warrants.[7] Attached hereto as Plaintiff's **Exhibit "14"** NYPD IO Number 25, also not produced by the Defendants. IO 25 references Patrol Guide sections 212-75, 212-78 neither of which were produced by the Defendants. However it appears that in 2003 the NYPD issued IO's 40-42 all related to search warrants. Also there appear to have existed PD forms related Warrants Tracking:

---

[6] Hector Gonzalez, Chairman N.Y.C. Civilian Complaint Board New York City Civilian Complain Board, *Recommendation that officers show no-knock search warrants to premise occupants to reduce complaints. Read the recommendation and NYPD's Interim Order in response*, http://www.nyc.gov/html/ccrb/downloads/pdf/noknockrec.pdf (Last accessed August 13, 2013.)).

[7] Florence L. Finkle, Executive Director N.Y.C. Civilian Complaint Board, *Recommendation that NYPD create database to track search warrants. Read the recommendation and NYPD's Interim Order in response* http://www.nyc.gov/html/ccrb/downloads/pdf/20010481.pdf

PD 374-143, PD 374-143A, and PD 374-150-A. It is unclear what the specific reference to these PD forms was in 2008 but as of August of 2010, Patrol Guide section 212-105 titled "Search Warrant Execution" and 212-106 titled "Search Warrant Post -Execution Critique" referenced them as mentioned above. It is unclear if Patrol Guide section 212-75, titled, "Search Warrant Applications" was in effect in 2008 or if part or all of it had been superceded by IO's 40-42.

16.     NYC's Rule 30(b)(6) witness also confirmed that each warrant has an associated warrant file and that it was policy to retain the warrant file, **which should include both Pre and Post warrant execution plans**. (*Id.*) pp 117:16-119; 126:25-129:17.) At his deposition Defendant Brijbukhan made clear that he handled and kept the paper work related to the search warrant of the Apartment in the "case folder" (Brijb. Dep., pp104:7-104:12, 116:14-117:21, 128:4-128:18.) He also was clear that a **post warrant execution plan is part is required** under the rules of the NYPD Narcotics Division. (*Id.* pp 57:6-57:24)

17.     On May 31, 2013 Defendants moved to bifurcate *Monell* discovery. On June 11, 2013 the Court denied that motion and stated in relevant part: [it] will reserve decision on the bifurcation issue until after it has decided the Defendant's motion for summary judgment regarding the liability of the individual officers. (June 11, 2013 Order, ECF Docket No. 71. *Bracketing added.*) It is unclear why NYC moved for summary judgment on the *Monell* claims at the same time as for the Individual NYPD Defendants. Defendants then sought to modify Plaintiff's revised Rule 30(b)(6) deposition notice, or otherwise limiting its scope. On June 21, 2013 the Court ruled in relevant part that the Defendants' request to limit the scope of the 30(b)(6) witness's testimony was denied. Further the Court ruled that the "witness may testify that the documents requested do not exist if he agrees with Mr. Ashanti's representations to the Court." (June 11, 2013 Order (ECF Docket No. 73.)

18.     Defendant's assertion that plaintiff bases the *Monell* claim on a singular incident is incorrect. Rather as set forth in the Second Amended Complaint ("Ad. Compl.") Plaintiff avers that the,

> acts and conduct complained of herein resulted in part from a *de facto* policy or custom of NYC implemented by the NYPD and/or the police officers of [] NYC, to allow police officers to work without proper levels of supervision and not properly investigate complaints of similar misconduct or discipline NYPD members regarding such complaints and other information it has been made aware of." (Ad. Compl. ¶52.; See also at ¶¶40, 51-56. *Bracketing added.*)

19.     NYC only produced one witness for the Rule 30(b)(6) deposition on July 2 and **that witness was not knowable or prepared to answer *Monell* questions <u>prior incidents</u> with in NYC- as specifically set forth in Items 10-13 of Plaintiff's Revised Rule 30(b)(6) notice.** 30(b)(6) Dep. pp 40:10 -40:22 (Item 10); pp 41:13-21, 43:19- 43:20 (Item 11); 44:7-44:15 (Item 12); and pp 44:16-45:3 (Item 13).

20.     Additionally the CCRB reports that from 2003 through 2007 there were 4,451 allegations to improper entry or searches of premises, 422 allegations of handcuffs being used applied to tightly, and 235 allegations of failure to display a search warrant (*see CCRB Status Report*, Statistical Appendix, Table 3, dated July 7, 2008, available at http://www.nyc.gov/html/ccrb/downloads/pdf/ccrbann2007_A.pdf

21.     Following a NYPD search warrant execution Alberta Spruill, a 57-year-old Harlem woman, died after the police threw a stun grenade into her apartment during a mistaken- No knock- raid and handcuffed her.[8] In the aftermath of Sprull's death, NYC's police commissioner apparently implemented additional procedures regarding, *inter alia*, search

---

[8] William k. Rashbaum, *Woman Dies After Police Mistakenly Raid Her Apartment*, N.Y. Times, May 17, 2003, *available at* http://www.nytimes.com/2003/05/17/nyregion/woman-dies-after-police-mistakenly-raid-her-apartment.html

warrant executions, and follow up on search warrant executions. NYC police commissioner issued a 24 page report about the incident to NYC's Mayor. [9]

22. A hearing was held by the NYC Council, Committee on Public Safety Commission, to examine the procedures for both obtaining and executing search warrants on June 4, 2003. [10] Additionally, the Manhattan Borough President, C. Virginia Fields, held a hearing and subsequently issued a report and recommendation in the aftermath of the Spruill's death. The Manhattan Borough President's Office sent details of the findings to the NYPD Commissioner - specifically point to the fact that **minors were routinely handcuffed by the NYPD in searches of homes**. *Report and Recommendations on the Execution of No-Knock Warrants, C. Virginia Fields*. Attached hereto as Plaintiff's **Exhibit "15"** are excepts of the Report & recommendation.)

23. In the introduction to the Report, the Borough President states:

> Clearly, there is something wrong with the way people are treated in the execution of search warrants. The recommendations and reforms the police commissioner have instituted are commendable, but do not go far enough." (*Id.* at 1.)

Therefore NYC was on notice that further remedial action was required and the Report makes the following recommendation:

> **The NYPD Must Prohibit Officers From Handcuffing Children Or Elderly Who Pose No Threat To Them**

---

[9] *See e.g.* Jim Dwyer, *Police Raid Gone Awry: A Muddled Path to the Wrong Door*, N.Y. Times, June 29, 2003 *available at* http://www.nytimes.com/2003/05/17/nyregion/woman-dies-after-police-mistakenly-raid-her-apartment.html ; Murray Weiss, *Commish: Our Fault; Kelly Lists Errors In Deadly Raid*, N.Y. Post, May 30, 2003, *available at* http://m.nypost.com/p/news/item_EeTRsOTxGLtS16vrRZWiNI

[10] Rivka Gewirtz Little, *More NYPD No-Knocks*, Village Voice, June 17, 2003, *available at* http://www.villagevoice.com/2003-06-17/news/more-nypd-no-knocks/; William k. Rashbaum, *Lawyers Urge Council to Increase Oversight of Police Raids*, N.Y. Times, June 5, 2003, *available at* http://www.nytimes.com/2003/06/05/nyregion/lawyers-urge-council-to-increase-oversight-of-police-raids.html

> - **Children and elderly individuals are routinely handcuffed regardless of the threat level they pose at the time.**
>
> - **The NYPD should have a clear policy prohibiting the handcuffing of children and elderly who do not pose an immediate risk to the safety.** (*Id.* at 19, Recommendation No. 6, *Bolding added*)

24. Further the Spruill tragedy was not isolated. The reports pointed to other instances, for example as follows:

> Ms. Ortizwas awakened by a loud banging at her door. She pleaded with the police to not break down her door. Once the police entered her home, they proceeded to search the apartment and pushed and handcuffed her 12-year old son. During this time, the police did not show Ms. Ortiz a search warrant or their badges. According to Ms. Ortiz, the police knew within 15 minutes that her apartment was clean, but they remained in her home for five hours, and kept them handcuffed for two and one-half hours. Ms. Ortiz has been unable to retrieve any documents regarding the incident. (*Id.* at 16.)

25. Law enforcement expert also testified at the hearing. Mr. Eric Adams, President of 100 Blacks in Law Enforcement that recommended that Children and the elderly should not be handcuffed. (*Id.* at 26.). Similarly, Dr. Christopher Cooper, on behalf of the National Black Police Association recommended that unnecessary aggression by police officers, especially in the use of handcuffs, must be prohibited. (*Id.* at 27.) Therefore had the Defendants searched the CCRB records and the NYPD warrant tracking systems it should have been able to identify prior instances.

WHEREFORE, and in light of the foregoing, it is respectfully requested that the Court: (i) provide some form of relive from Defendants' discovery violations that materially and adversely affect Plaintiffs' ability to (a) fully respond to both the individual and supervisory aspects of Defendants' Motion and (b) respond at all to the *Monell* portion of Defendants' motion, (ii) Deny Defendants' Motion for Summary Judgment, and (iii) for such other and further relief as the Court may deem just and proper.

DATED: August 20, 2013

Respectfully submitted,

_____
Glenn A. Wolther