UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
KATRINA HOLLINS et al.,                                    :
                                    Plaintiffs,            :
                                                           :        10 Civ. 1650 (LGS)
                         -against-                         :
                                                           :        OPINION & ORDER
CITY OF NEW YORK et al.,                                   :
                                    Defendants.   :
                                                           :
----------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   3/3/14

LORNA G. SCHOFIELD, District Judge:

Plaintiff A.C. brings claims against officers Karanlall Brijubukhan, Jenny Ann Nelson, Doug Williams, George Wolfrom, Jorge Morel, Frank Chiodi, Edwin Galan, Kevin Canavan, Claudio Raminez, Donald Boller, Lieutenant Patrick Ryan, and Lori Pollock (the "Individual Defendants") and the City of New York pursuant to 42 U.S.C. §§ 1981, 1983, and 1988. (Second Amend Complaint caption, *hereinafter* "SAC").  Plaintiffs S.W. and Katrina Hollins settled have settled their claims.

The § 1983 claims allege constitutional deprivations pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.  Plaintiff alleges that she was subject to warrantless search and seizure, unreasonable detention, excessive force and false arrest, deprivation of liberty without due process, deprivation of the right to privacy, denial of equal protection based upon race, and deprivation of the substantive due process right to familial association.  Plaintiff brings supervisory liability claims against Defendants Raminez, Boller, Ryan, and Pollock (the "Supervisory Defendants").  Plaintiff brings a *Monell* municipal liability claim against the City of New York for failure to properly recruit, train and discipline its officers in the execution of a search warrant in public housing projects.  Plaintiff brings state common law claims for, *inter alia*, false arrest, false imprisonment, and negligence.  Finally, Plaintiff

brings New York State Constitutional claims against all Defendants.  The Defendants move for summary judgment as to all claims.  Plaintiff's opposition to Defendants' Motion for Summary Judgment includes a Rule 56(d) affidavit that Plaintiff is unable to present certain facts that justify her opposition.  For the reasons stated below, Defendants' Summary Judgment Motion is denied as to Plaintiff's Fourth Amendment claims for unreasonable seizure and for municipal liability, and granted as to all other respects.

**I.  Facts**

**A.  The Incident**

On November 29, 2008, sometime between 5:55 a.m. and 6:30 a.m. members of the New York City Police Department executed a search warrant at apartment 1D of a building in East New York, Brooklyn, NY (the "Apartment").  The search warrant was issued on November 25, 2008, by Justice Raymond Guzman of the New York State Supreme Court, Kings County.  The warrant was a "no-knock" warrant, which authorizes entry without prior notice.  The warrant authorized the police to search for heroin, paraphernalia used to package and process heroin, documents relating to trafficking heroin, U.S. currency related to trafficking heroin, and any computers or cell phones and written records in the apartment.  The same day, the NYPD executed a search warrant in apartment 5D of the same apartment complex, which was coordinated with the execution of the search warrant executed at the Apartment.

Plaintiff A.C. was twelve years old at the time of the search.  A.C., her mother Katrina Hollins, and her two siblings S.W., who was seven years old, and I.M., who was two years old, were staying in the Apartment, which belonged to A.C.'s grandmother.  A man named Alexander Felton, a friend of the family, and his girlfriend were in the Apartment when the police arrived.  S.W. Sr., who is S.W.'s father, had arrived shortly before the police arrived, but was not staying

at the Apartment for the weekend.  In sum, there were four adults and three children in the Apartment.

The Apartment had three bedrooms.  When the police arrived, Katrina Hollins was in one bedroom with S.W. Sr.  Her three children were sleeping in a second bedroom.  Mr. Felton and his girlfriend were in the third bedroom.  The police forcibly entered the Apartment.  Katrina Hollins and S.W. Sr. were placed in handcuffs first.   Mr. Felton and his girlfriend were taken from their bedroom in handcuffs and placed on the sofa.

Some members of the police team entered the bedroom where A.C. and her siblings had been sleeping, put a gun to her face, told A.C. to get on her knees, searched her, and placed her in handcuffs with her arms behind her back.  The police then took her into the living room and placed her on the sofa.  At some time after A.C. was removed from the bedroom, I.M. and S.W. were taken from the bedroom to the sofa in the living room.  They were not placed in handcuffs.  After the sweep of the Apartment was complete, all seven occupants of the Apartment who were present before the police arrived were seated on the sofa in the living room.

The officers assigned with cuffing duties were Officers Nelson and Williams, but no witness recalled who actually handcuffed the Plaintiff.  Officers Wolfrom, Brijbukhan, Morel, Chiodi, Canavan and Galan were members of the entry team who made the initial sweep of the Apartment.  Sergeant Raminez was at the Apartment, and Sergeant Boller was also present at the scene.  The Apartment was secured and deemed safe to begin searching within two minutes after the police entered.

A.C. was detained in handcuffs for more than three hours and potentially more than four hours.  (*See* Dkt. 81 at p. 2, ¶¶ 3-4).  During the seizure, A.C.'s mother, Katrina Hollins, asked an officer to remove A.C.'s handcuffs.  (Dkt. 81, p. 9 at 31).  A.C. also complained about the tightness of the handcuffs, which left bruising, but did not result in any lasting injuries. The

handcuffs were eventually loosened, but not removed.  Defendant Raminez was the supervisor who decided when handcuffs would be removed, potentially in consultation with Defendant Boller.

Pills, but no heroin, were found in the Apartment.  At around 8:40 a.m., Detectives Brijbukhan and Morel left the apartment and took the pills to the 75th Precinct.  Detective Brijbukhan remained at the precinct until 11:30 a.m., when he went to the Narcotics Bureau Brooklyn North.  No officer was able to testify what time the search of the Apartment was completed or how long the search lasted.

Katrina Hollins initially was arrested for possession of a controlled substance, but that arrest was voided.  Three others were arrested, according to Officer Morel.  No officer testified as to when all of the officers left the Apartment, or at what point the arrests were voided and the Plaintiff and her family were no longer detained.

## B.  Training and Policy

Several witnesses testified that NYPD officers received training on the execution of search warrants from the Organized Crime Control Bureau ("OCCB").  At their OCCB training each officer receives an OCCB manual.  Defendant Wolfrom testified that handcuffing during the execution of a search warrant is situation specific.  Defendant Brijbukhan testified that children and the elderly typically are not handcuffed. Defendants did not produce the OCCB manual, but the Rule 30(b)(6) witness for the City of New York, Captain Gerald Corrigan, testified regarding NYPD training and policies on the execution of search warrants.  Captain Corrigan testified that decisions regarding detention in handcuffs pursuant to a search are made by the highest ranking officer on the scene.  He testified that the City's policy is that the use of handcuffs should be reasonable under the circumstances of each situation, and that the City had no blanket policy regarding the use of handcuffs on minors.

The Civilian Complaint Review Board, an independent New York City agency that handles reports of police misconduct, received over 4,000 complaints about the execution of search warrants and 422 complaints regarding excessive handcuff tightness in the five years preceding the incident in this case.  In 2003 the NYPD executed a "no-knock" search warrant that led to the death of a Harlem woman.  That death led to an investigation into the NYPD's execution of search warrants.  C. Virginia Fields, the Manhattan Borough President in 2003, also issued a Report and Recommendation to the Commissioner of the New York Police Department, which catalogued numerous complaints regarding the execution of "no-knock" search warrants. The Report stated, *inter alia*, that children were "routinely" handcuffed regardless of the threat level at the time the search warrants were executed.

## II.  Legal Standard

The standard for summary judgment is well established.  Summary judgment is appropriate only when the record before the Court shows that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor.  *See id.* at 255.

## III.  Discussion

## A.  Plaintiff's Rule 56(d) Affidavit

Counsel for Plaintiff filed an affidavit pursuant to Rule 56(d), which asserts that Plaintiff was unable to discover information relevant to her opposition to summary judgment.  Where a plaintiff is able to make such a showing, a court may defer considering the motion, deny the

motion, allow the plaintiff more time to take discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d).  "This Circuit has established a four-part test for the sufficiency of an affidavit" pursuant to Rule 56(d).  *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994).  "The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful."  *Id.*

Counsel for Plaintiff stated in his affidavit that some Defendants and some non-party NYPD witnesses were not made available to him for depositions in a timely manner, preventing Plaintiff from opposing summary judgment on her individual liability claims.  Plaintiff's counsel also states that certain documents relevant to his *Monell* claim and the issue of qualified immunity were not produced to him, even though their relevance and existence repeatedly were confirmed by a number of Defendants in their depositions.  These documents include the OCCB manual, the NYPD Patrol Guide, and Interim Orders that speak to CCRB review of complaints regarding search warrant execution.  Counsel for Plaintiff also states that the 30(b)(6) witness provided by the Defendant City of New York did was not prepared to testify on a number of issues in the 30(b)(6) deposition notice that directly impact his ability to oppose summary judgment on his *Monell* claim.

Discovery in this case was exceedingly contentious and the disputes between the parties are well-documented.  During the last discovery conference on May 16th, 2013, before this motion was filed, the Court ordered defense counsel to make witnesses available for depositions and produce any relevant documents that so far had not been produced.  Fact discovery closed on May 31, 2013 except the deposition of Defendant City of New York's Rule 30(b)(6) witness. The Court also noted during the deposition of Captain Gerald Corrigan that the discovery cutoff was firm and that fact discovery would not be extended.  On June 21, 2013, the Court denied the

Defendant's request to limit the scope of the Plaintiff's 30(b)(6) deposition, and reiterated that fact when the parties called the Court during the deposition of the Rule 30(b)(6) witness. In particular, the Court told counsel for all parties that Plaintiff's counsel would be permitted to ask Captain Corrigan about the existence of documents that Mr. Ashanti, counsel for the City of New York, had affirmed to the Court did not exist. Captain Corrigan was unprepared to speak as to some of those questions, and Mr. Ashanti repeatedly objected to Plaintiff's counsel's questioning on the matter.

The Plaintiff had ample time to conduct fact discovery, including depositions of party and nonparty witnesses. Therefore, the request in the Rule 56(d) affidavit as it pertains to individual liability is denied. However, the 30(b)(6) deposition and document production related to *Monell* discovery was inadequate. The deposition was particularly inadequate because the witness was not prepared to speak about documents that the Court had ordered he be prepared to address, if only to confirm Mr. Ashanti's representations to the Court. As discussed below, the record is sufficient to deny Defendant's Motion for Summary Judgment as to Plaintiff's *Monell* claim. If it were not, the Plaintiff would be provided more time to develop a factual record to oppose *Monell* liability.

## B. Plaintiff's 42 U.S.C. § 1983 Claims

In order to establish a claim pursuant to 42 U.S.C. § 1983, a plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color" of state law. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (internal quotation marks omitted).

Analysis of a § 1983 claim begins by identifying the particular rights of which a plaintiff has allegedly been deprived. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979); *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("The validity of the claim must then be judged by reference

to the specific constitutional standard which governs that right . . . .").  Plaintiff lists ten

deprivations under the Fourth, Fifth, and Fourteenth Amendments against the Individual

Defendants.  The Court identifies three distinct rights that Plaintiff alleges were violated in the

Second Amended Complaint.  First, the Plaintiff alleges a violation of the Fourth Amendment

right to be free from an unreasonable seizure and to be free from the use of excessive force in

effectuating that seizure. Second, the Plaintiff alleges a violation Fourteenth Amendment

substantive due process right to familial association.  Third, the Plaintiff alleges a violation of the

Fourteenth Amendment right to equal protection of the laws.  All other claims in Paragraph 43 of

the Second Amended Complaint are subsumed in one of these rights for analysis Plaintiff's

§ 1983 claims.

### i. Unreasonable Seizure

Defendants move for summary judgment on Plaintiff's claim that she was deprived of her

Fourth Amendment right to be free from an unreasonable seizure.  Defendants argue that the

detention was objectively reasonable as a matter of law.  Because there are disputed issues of

material fact necessary to determine the objective reasonableness of the seizure, Defendants'

motion on this issue is denied.

The Fourth Amendment protects the right of the people to be free from unreasonable

search and seizure.  *See Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2080 (2011).  Assessing

reasonableness under the Fourth Amendment "'is predominantly an objective inquiry.'"  *Id.*

(quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000)).  A warrantless seizure is

objectively reasonable only if legitimate law enforcement objectives outweigh the loss in liberty

from the detention.  *See Florida v. Royer*, 460 U.S. 491, 499-500 (1983); *Michigan v. Summers,*

452 U.S. 692, 697-98 (1981).  Three Supreme Court cases bear directly on the objective

reasonableness of detaining occupants of a home while executing a valid search warrant.

8

In *Michigan v. Summers,* 452 U.S. 692 (1981), the Supreme Court held that officers executing a search warrant for contraband have the "limited authority to detain the occupants of the premises while a proper search is conducted."  452 U.S. at 705.  The Court held that the intrusion in detaining occupants was marginal because the officers already had a right to be in the home.  *See id.* at 703.  The Court held that the detention was justified given the "legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found," as well as "the interest in minimizing the risk of harm to the officers," and the need to facilitate "the orderly completion of the search."  *Id.* at 702-703.

In *Muehler v. Mena*, the police obtained a warrant to search the home of a suspected gang member, which the police believed to contain drug contraband and weapons.  544 U.S. 93 (2005).  A "SWAT" team executed the warrant, and the police placed Iris Mena in handcuffs at gunpoint and took her to the garage along with three other detainees.  *Id.* at 96.  Two officers watched the four detainees while the other officers executed the search.  Mena was in handcuffs for "two to three hours" during the search.  *Id.* at 103 (Kennedy, J., concurring).  A divided Court held that the seizure was permissible because it was objectively reasonable.  Five justices held that the use of handcuffs and placement in the garage was objectively reasonable because the "governmental interests . . . are at their maximum when . . . a warrant authorizes a search for weapons and a wanted gang member resides on the premises."  *Id.* at 100.  The Court continued, "in such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants" and "the need to detain multiple occupants made the use of handcuffs all the more reasonable."  *Id.*  The Court balanced the intrusion of the seizure against the legitimate law enforcement objectives and held that "[t]he officers' use of force in the form of handcuffs to effectuate [the plaintiff's] detention in the garage, as well as the detention of the three other

occupants, was reasonable because the governmental interests outweigh the marginal intrusion." *Id.* at 99.

The fifth vote for the Court's opinion came from Justice Kennedy, who added a concurrence to "help ensure that police handcuffing during searches becomes neither routine nor unduly prolonged."  *Id.* at 102.  He wrote that handcuffs "should also be removed if, at any point during the search, it would be readily apparent to any objectively reasonable officer that removing the handcuffs would not compromise the officers' safety or risk interference or substantial delay in the execution of the search."  *Id.* at 103.

In *Los Angeles County., California v. Rettele*, 550 U.S. 609 (2007), the Supreme Court addressed whether it was objectively reasonable to detain the occupants of a residence in the nude for two minutes while executing a valid search warrant.  The Court held that a brief detention in the nude was objectively reasonable because there was a legitimate law enforcement objective to "secure the room and ensure that other persons . . . did not present a danger." *Rettele*, 550 U.S. at 615.  The Court added that the officers were not free to force the plaintiffs in that case to stand in the nude "any longer than necessary" and that a prolonged detention "might render a search unreasonable."  *Id.*

Taking the existing Supreme Court case law, and viewing the facts in the light most favorable to the Plaintiff, a jury could find that the Defendants' actions were not objectively reasonable.  First, there is no indication that the police believed there to be a gang presence or comparable danger associated with the Apartment, as there was in *Mena*, which reduces the safety rationale for the length of the detainment.  544 U.S. at 100.  Second, the Plaintiff was twelve years old at the time of the search.  This fact both lowers concerns regarding officer safety and heightens concerns about the significance of the intrusion on her liberty.  Third, the Plaintiff was detained with her arms behind her back for potentially more than four hours, which

may have been longer than necessary to effectuate the legitimate law enforcement purposes articulated in *Summers*.  452 U.S. at 703.  Fourth, the record is unclear how long the seizure lasted in relation to the search, and whether the seizure extended well beyond the time necessary to search the apartment.  If the seizure lasted longer than the search, then the seizure likely lasted longer than necessary to effectuate legitimate law enforcement purposes.  *Summers*, 452 U.S. at 703. Therefore material issues of fact must be submitted to a jury to determine the reasonableness of Defendants' actions.

Defendants argue that there are no material issues of fact because Plaintiff impermissibly relies on testimony that contradicts her own regarding the length of the seizure, and that Plaintiff's opposition to summary judgment relies on mere conjecture regarding the length of the seizure.  Defendants also argue that based on the undisputed facts, the detention was only as intrusive as necessary to effectuate the search, and that their conduct is categorically protected by the Supreme Court's holding in *Mena*.

Defendants rightly state that a plaintiff may not defeat summary judgment by submitting an affidavit contradicting her own prior deposition testimony.  *See Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987).  Here Plaintiff's counsel submitted a Local Rule 56.1 Statement asserting facts that contradict some of the Plaintiff's testimony, but that is not the same as a party contradicting her own testimony.  Several people testified regarding the length of the detention, and there is also relevant documentary evidence.  Plaintiff, like the other witnesses, was deposed almost four years after the search.  She is as subject to the vagaries of human memory as any other witness, and the Court is not permitted on this motion to weigh her credibility against the other evidence.  *See Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996) (on summary judgment "the court should not weigh evidence or assess the credibility of witnesses").

The Defendants also argue that Plaintiff's opposition to summary judgment rests on conjecture and surmise about the length of the search, which if ignored, would allow the Court to grant summary judgment.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  This argument fails because Plaintiff relies on more than conjecture and points to evidence in the record that could support an inference in her favor.  On summary judgment a district court is required to draw all reasonable inferences in favor of the nonmoving party.

A reasonable inference from the evidence is that the detention was excessively long and exceeded the amount of time necessary to effectuate legitimate law enforcement purposes.  A.C. was in handcuffs more than three hours and possibly more than four hours.  The search commenced sometime between 5:55 a.m. and 6:30 a.m.  The Apartment was small and required only two minutes to secure.  Although none of the police officers could testify how long the search lasted, two of the officers left at around 8:30 a.m. to take the pills to the precinct.  A concurrent and coordinated search took place in apartment 5D.  No officer testified regarding when Plaintiff was released from the handcuffs, or when the police left the premises and Plaintiff and her family were no longer detained.  A jury could reasonably infer that the search lasted approximately two hours, but that Plaintiff was handcuffed an additional hour or more while the police coordinated the search of the other apartment or attended to other police business not related to the search of the Apartment.  Thus, Defendants' Motion for Summary Judgment is denied as to the objective reasonableness of the seizure.

### ii.  Qualified Immunity on Reasonableness of Seizure

The Defendants move for summary judgment on the basis of qualified immunity.  They argue that they are entitled to qualified immunity because the unlawfulness of detaining a twelve-year-old occupant of an apartment pursuant to a valid search warrant was not clearly established on the date of the incident.  This argument must be rejected at this stage of the

proceedings.  In order for the Court to make its legal determination on qualified immunity issues of material fact must be decided by a jury.

Qualified immunity is an affirmative defense for which defendants have the burden of proof.  *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).  Qualified immunity questions should be resolved "at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Whether conduct is entitled to qualified immunity is "a mixed question of law and fact."  *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).  If a court cannot resolve the question of qualified immunity at an early stage, then the jury should decide the relevant factual issues by special interrogatories, but the ultimate determination of qualified immunity is to be resolved by the court.  *See Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990).

Government officials are generally shielded from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An officer is entitled to qualified immunity where "(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) (internal quotation marks omitted).

Whether a clearly established right existed must be considered "in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194 (2001), *receded from on other grounds in Pearson*, 555 U.S. at 236.  It is not enough to say that there is a Fourth Amendment right to be free from unreasonable search and seizure.  Instead "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 202.  It is objectively reasonable for an officer to believe his actions were lawful if "officers of reasonable competence could disagree on the

legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (internal quotation marks omitted).

At the time of the incident in November 2008, *Summers* (1981) and *Mena* (2006) had clearly established Fourth Amendment right not to be detained without a warrant for longer, or with more force, than necessary to accomplish legitimate law enforcement objectives. *See Brown v. City of New York*, No. 11 Civ. 1068, 2013 WL 491926, *7 (S.D.N.Y. Feb. 8, 2013). To resolve the issue of qualified immunity, the Court must determine whether officers of reasonable competence could disagree on the legality of the Defendants' actions. As noted above, reading the evidence in the light most favorable to Plaintiff, she may have been detained in handcuffs for longer than the length of the search of the Apartment. If the Plaintiff had been detained longer than was necessary to complete the search, no officer of reasonable competence could have thought his actions were lawful.[1] *Cf. Hines v. City of Albany*, No. 06 Civ. 1517, 2011 WL 2620381, *11, 18 (N.D.N.Y. July 1, 2011), *aff'd sub nom. Hines v. Albany Police Dep't*, 520 F. App'x 5 (2d Cir. 2013) ("Here, there are questions of fact as to whether Plaintiffs continued to be detained after Prince was removed from the house, for how long, and whether handcuffs were used.").

### iii. Excessive Force

Plaintiff brings a § 1983 claim for excessive force, which is considered under the Fourth Amendment's objective reasonableness standard. *See Graham* , 490 U.S. at 394. Plaintiff's claim for excessive force could be based on either the use of handcuffs or placing her at gunpoint. Defendant moves for summary judgment arguing that the use of handcuffs was

---

[1] Because the indeterminate length of the search is sufficient to deny qualified immunity, the Court does not reach the narrower issues regarding, for example, the objective reasonableness of handcuffing a twelve-year-old girl for several hours despite no evidence of a threat to officer safety for the entirety of the search. To the extent necessary, the Court will issue special interrogatories to the jury on the narrower issues.

privileged as a matter of law and was not excessive.  Because there is insufficient evidence of injury from the use of handcuffs, Defendant's motion for summary judgment is granted on this issue.  Neither party addresses in their papers whether putting the Plaintiff at gunpoint in effectuating the search warrant qualified as excessive force, but summary judgment is granted on that claim because it was objectively reasonable under the circumstances for the officers to have a weapon drawn during the initial sweep of the Apartment.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks omitted).  Courts apply a separate standard, however, to claims for excessive force in the use of handcuffs.  While handcuffs must be reasonably tight to be effective, handcuffs that are overly tight may constitute an excessive use of force on the part of the officer using them.  *See Lynch ex rel. Lynch v. City of Mount Vernon,* 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).  "[I]n evaluating the reasonableness of handcuffing, a court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists."  *Id.* (alterations in original).  There is a consensus among District Courts in this Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising.  *See id.* (collecting cases); *Sachs v. Cantwell*, 10 Civ. 1663, 2012 WL 3822220, at *14.  (S.D.N.Y. Sept. 4, 2012) (collecting cases).  While Plaintiff did tell the NYPD officers that the handcuffs were unreasonably tight, Plaintiff also testified that the handcuffs caused her pain and bruising that lasted only a day.  As courts in this Circuit have held that this is insufficient force to qualify as excessive, summary judgment is granted as to the claim for excessive force in the use of handcuffs.

Because police officers have a legitimate safety concern when initially sweeping and securing a residence during the execution of a search warrant, it was objectively reasonable for Defendants to place the Plaintiff at gunpoint while effectuating the search warrant. *See Rincon v. City of New York*, 03 Civ. 8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005); *Anderson v. United States*, 107 F. Supp. 2d 191, 199 (E.D.N.Y. 2000) (holding that it was objectively reasonable to draw weapons on children during the initial sweep of a residence); *McKim v. Cnty. of Rensselaer*, 09 Civ. 650, 2011 WL 2580327, *11 (N.D.N.Y. June 28, 2011); *see also Mills v. Fenger*, 216 F. App'x 7, 9-10 (2d Cir. 2006) (holding that mere use of a gun by the police without more is insufficient to establish an excessive force claim); *United States v. Lauter*, 57 F.3d 212, 216 (2d Cir. 1995) (officers may conduct a protective sweep pursuant to a warrant). Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claim for excessive force.

## B.  Plaintiff's Racial Discrimination, Equal Protection, and Substantive Due Process Claims

Defendant moves for summary judgment on Plaintiff's racial discrimination, equal protection, and substantive due process claims.  Plaintiff does not appear to oppose Defendants' motion for Summary Judgment on these claims and Plaintiff has pointed to no facts that would support her claims.  On that ground alone, the Court could dismiss these claims.  *See Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 340 (E.D.N.Y. 2006) (collecting cases).  Even considering the merits, summary judgment is warranted as to these claims.

### i. § 1981

To establish a claim under 42 U.S.C. § 1981, a plaintiff must demonstrate facts in support of the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or

more of the activities enumerated in the statute." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Plaintiff is a member of a racial minority, but there are no facts in the record that could be used to establish intent to discriminate on the basis of race by the Defendants. Accordingly, Defendants are granted summary judgment as to Plaintiff's § 1981 claims.

### ii.  Equal Protection Clause

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class" the Second Circuit has "long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

In order to prevail on selective enforcement claims in this Circuit, plaintiffs must show both "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* (internal quotation marks omitted). Plaintiff has shown no facts that would support an inference that she was treated differently than other similarly situated individuals or that such treatment was based on impermissible considerations. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claim for violation of the Equal Protection Clause.

### iii.  Substantive Due Process

Plaintiff alleges that the seizures violated her substantive due process right to familial association.  In general, family members have a substantive due process right to associate without interference from the state.  *See Anthony v. City of New York*, 339 F.3d 129, 142-43 (2d Cir. 2003).  In order to prevail on such a claim, a plaintiff must show separation from a family member that was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection."  *Id.* at 143 (internal quotation marks omitted).  Plaintiff has not shown any meaningful separation from her family and has brought forward no evidence that any separation was shocking, arbitrary and egregious.  Accordingly, Defendants are granted summary judgment as to Plaintiff's substantive due process claim.

**D.  State Law Claims**

Plaintiff brings state law claims for false arrest, false imprisonment, negligence, negligent care, custody and handling of a minor, improper handling and execution of a minor pursuant to New York Criminal Procedure Law § 690.50, negligent training, and negligent supervision. "New York law . . . does grant government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir.2006).

**i.  False Arrest and False Imprisonment**

"The common law tort of false arrest is a species of false imprisonment, an action derived from the ancient common-law action of trespass [that] protects the personal interest of freedom from restraint of movement."  *Singer v. Fulton Cnt'y Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) (alteration in original) (internal quotation marks omitted).  "Under New York law, a plaintiff claiming false arrest must show, *inter alia,* that the defendant intentionally confined him [or her] without his [or her] consent and without justification."  *Weyant v. Okst,* 101 F.3d 845, 852 (2d

Cir. 1996).  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  For the same reason that Plaintiff's Fourth Amendment § 1983 claims survived above, Plaintiff's claims for false arrest and false imprisonment survive as well.  *See Johnson v. City of New York*, No. 08 Civ. 5277, 2010 WL 2292209, at *7 (S.D.N.Y. June 7, 2010) (applying its analysis of § 1983 claim to its analysis of state law false arrest claims).

### ii.  Negligence and Negligent Care

Where a plaintiff seeks damages that arise "from her arrest and detention, and she may not recover under general negligence principles."  *Ferguson v. Dollar Rent A Car, Inc.*, 959 N.Y.S.2d 55, 56 (1st Dep't. 2013); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  Instead, recovery is determined by established rules that define the tort of false arrest.  *See id.* (citing *Boose v. City of Rochester*, 421 N.Y.S.2d 740 (4th Dep't. 1979)).  Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claims for negligence and negligent care.

### iii.  Negligent Hiring, Supervision, and Training

Under New York law, a claim for negligent hiring, training, and supervision, "in addition to the standard elements of negligence," requires "a plaintiff [to] show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and, (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Ehrens v. Lutheran Church,* 385 F.3d 232, 235 (2d Cir. 2004) (citations omitted) (internal quotation marks omitted).  Moreover, to establish a claim for negligent hiring,

training, and supervision requires the defendant's actions to be outside the scope of his employment. *See Karoon v. N.Y.C. Transit Auth.*, 659 N.Y.S.2d 27, 29 (1st Dep't. 1997).

The Plaintiff has put forward no evidence that the City knew of any conduct from any specific individual Defendant that would have put the City on notice of a propensity to cause the alleged injuries here. Moreover, it is undisputed that the Defendants were acting in the course of their employment when the alleged injuries occurred. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's claims for negligent hiring, training, and supervision.

### iv.  Criminal Procedure Law 690.50

NewYork Criminal Procedure Law § 690.50 prescribes how search warrants must be executed. Paragraph One requires that, absent special circumstances, a police officer must show a copy of the warrant to an occupant of the premises searched. Plaintiff brings a cause of action seeking remedies under this section. Because no explicit or implied private right of action exists under N.Y. Crim. Pro. Law § 690.50, summary judgment is granted as to any claim under § 690.50.

There is no explicit private right of action in § 690.50, and neither party disputes this fact. There is also no implied right of action under § 690.50. The Court is "mindful that in the absence of any guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes." *Watson v. City of New York*, 92 F.3d 31, 36 (2d Cir. 1996) (internal quotation marks omitted). In New York, when a statute does not provide an express private right of action, a court must consider three factors in implying one: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether

creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day, Inc.*, 541 N.E.2d 18, 20 (N.Y. 1989).

Section 690.50 arises under Title T of the New York Criminal Procedure Law titled "Procedures for Securing Evidence by Means of Court Order and for Suppressing Evidence Unlawfully or Improperly Obtained." This title alone suggests that § 690.50 is not intended to create a private right of action. Moreover, where existing remedies are available, such as a Fourth Amendment claim for unreasonable search and seizure and a state law claim for false imprisonment, "[a] separate statutory right of action would serve no purpose beyond broadening liability to cover nonintentional violations." *Watson*, 92 F.3d at 37. There is thus no private right of action implied under § 690.50, and Defendants' motion for summary judgment is granted as to Plaintiff's claim under § 690.50

**E.  Section 1983 Liability of Officers Not Personally Involved in Seizure**

Defendant moves for summary judgment against Plaintiff's supervisory liability claims against Defendants Pollock, Raminez, Ryan, and Boller. Because there is no supervisory liability where there is no personal involvement, and because the categories of personal involvement have been severely curtailed by the Supreme Court's holding in *Ashcroft v. Iqbal*, the Court grants summary judgment as to Defendants Pollock and Ryan, but denies summary judgment as to Defendants Raminez and Boller.

Individual liability in the Second Circuit under § 1983 requires that a defendant was personally involved in the alleged violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). In *Colon v. Coughlin*, the Second Circuit held that personal involvement could be found in five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under

which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to [constitutional rights] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In 2009, the Supreme Court in *Ashcroft v. Iqbal* squarely addressed supervisory liability claims, and held that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  556 U.S. 662, 676 (2009).  It is unclear—and the Second Circuit has not explicitly ruled on—what remains of *Colon* in the wake of *Iqbal*.  *See Reynolds v. Barrett*, 685 F.3d 193, 205 n. 14 (2d Cir. 2012) (noting the conflict between *Iqbal* and *Colon*, but electing not to decide what remains for *Colon* and deciding on other grounds).

The district courts of the Second Circuit disagree about what remains of *Colon* after *Iqbal*. *Compare Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (finding that *Iqbal* abrogated three of the *Colon* categories), *aff'd* 387 Fed. App'x 55 (2d Cir. 2010) (summary order), *and Newton v. City of New York*, 640 F.Supp.2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in *Ashcroft v. Iqbal*."), with *Qasem v. Toro*, 737 F. Supp. 2d 147, 151 (S.D.N.Y. 2010) (declining to adopt the "narrow interpretation of *Iqbal*" advanced by *Bellamy* and *Newton*), and *Jackson v. Goord*, 664 F. Supp. 2d 307, 324 n. 7 (S.D.N.Y. 2009) (holding Colon standard is unaffected by *Iqbal* in deliberate indifference case, because *Iqbal* "involved discriminatory intent.").

This Court agrees with *Bellamy v. Mount Vernon Hosp.*, which held that "Only the first and part of the third *Colon* categories pass *Iqbal*'s muster."  2009 WL 1835838 at *6.  After *Iqbal*, a supervisor can be liable only "if that supervisor participates directly in the alleged

constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred." *Id.* Only the first and third prongs of *Colon* require active involvement of a supervisor. *Id.*

Construing disputed facts in a light most favorable to Plaintiff, there is no evidence to suggest that Defendants Pollock or Ryan could be held liable for the alleged Fourth Amendment violations. Plaintiff's failure to depose Defendant Ryan before the close of discovery does not save Plaintiff on this motion, as discussed in Section III.A. Plaintiff has put forward no evidence of any personal involvement from Defendants Pollock or Ryan. Conversely, there are disputed issues of material fact regarding Defendants Raminez and Boller, who were present at the Apartment, and who may have been making decisions regarding the length of the detention and the amount of time Plaintiff spent in handcuffs.

To the extent Defendants' Motion for Summary Judgment seeks to dismiss § 1983 claims against officers at the Apartment who did not have cuffing duties, that argument fails. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Id.* (citations omitted). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.* The Individual Defendants who were at the Apartment had an opportunity to intervene, and because there are issues of material fact regarding the alleged Fourth Amendment violation, summary judgment is denied. *See Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 599

(S.D.N.Y. 2013) ("However, summary judgment is inappropriate when there are genuine disputes of material fact concerning what the officers who failed to intervene observed regarding the other officers' alleged violations of plaintiffs' constitutional rights.") (internal quotation marks omitted).

## F.  Claims Under the New York State Constitution

Plaintiff's claims under the New York State Constitution substantially mirror her § 1983 claims.  Courts in the Second Circuit generally agree that New York State Constitution creates no individual liability where § 1983 provides a remedy.  *See, e.g. Batista v. City of New York*, 05 Civ. 8444, 2007 WL 2822211 at *9 (S.D.N.Y. Sept. 25, 2007); *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 447 (S.D.N.Y. 1999); *DeVito v. Barrant*, No. 03 Civ. 1927, 2005 WL 2033722 at *7 (E.D.N.Y. Aug. 23, 2005).  Consequently, Defendants motion for summary judgment is granted as to claims under the New York State Constitution.

## G.  *Monell* Liability

Defendant moves for summary judgment as to Plaintiff's claim for municipal liability pursuant to *Monell*.  Because of disputed issues of material fact regarding the existence of a policy or custom in the execution of search warrants and the detainment of occupants, the motion is denied.

"It is well established that a municipality may not be held liable solely on the basis of *respondeat superior*."  *Powell v. Gardner*, 891 F.2d 1039, 1045 (2d Cir. 1989).  "In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by its employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy."  *Id.*  "This does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation."  *Id.*  Circumstantial proof may be used to draw the inference that such a policy existed, incuding "evidence that the municipality

24

customarily failed to train its employees and displayed a deliberate indifference to the constitutional rights of those within its borders, or evidence that the municipality repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights." *Id.* (citations omitted). "The single incident alleged in a complaint, however, especially if it involved only actors below the policy-making level, generally will not suffice to raise an inference of the existence of a custom or policy." *Id.*

Plaintiff offers ample evidence, including CCRB reports and the Report and Recommendation of C. Virginia Fields, of numerous incidents where the NYPD has mishandled the execution of a search warrant. NYPD officers are trained on the execution of search warrants at OCCB. A jury could reasonably infer a citywide custom or policy in the execution of search warrants that leads to detentions that are overly long or accomplished with too much force, and are not objectively reasonable in violation of the Fourth Amendment. Consequently, the City's motion for summary judgment on the *Monell* claim is denied.

Further, the Court accepts the arguments in Mr. Wolther's Rule 56(d) affidavit regarding *Monell* Discovery. The 30(b)(6) witness did not come prepared to discuss issues relevant to the *Monell* claim. The OCCB manual, among other documents, was never produced, and it contained procedures for executing search warrants. Pursuant to Rule 56(d), even if the City's Motion for Summary Judgment had been viable as to the *Monell* claim on the evidence before the Court, the Court would have deferred decision on the Motion until the Plaintiff obtained the requested discovery. Plaintiff is entitled to that discovery before trial, and the Defendant is ordered to produce it.

Individual liability for a violation of Constitutional rights is necessary to find municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Accordingly, in the interest of efficiency and to avoid possible prejudice to the individual Defendants, the Court will

first hold a trial on the underlying Constitutional violations that survive this Motion for Summary Judgment, and then if the jury finds liability on the part of any of the individual Defendants, the same jury will hear the *Monell* claim against the City of New York.  *See Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) (approving of District Court's bifurcation of § 1983 claims for individual and *Monell* liability under Fed. R. Civ. P. 42(b)).

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.  Plaintiff Katrina Hollins's motion for legal fees, costs and expenses in DENIED without prejudice to renewal at a later date.

It is hereby ORDERED that the Defendant City of New York shall produce within 14 days of the date of this order all materials relevant to Plaintiff's *Monell* claim, including but not limited to the OCCB manual, the Patrol Guide, and any relevant internal memoranda.  If counsel for the Defendant does not comply, the Court will consider sanctions and a finding of civil contempt for repeated willful violation of the Court's orders.

It is further ORDERED that the parties shall appear for a scheduling conference on March 19, 2014 at 11:50 a.m.

The Clerk of the Court is ordered to close the motions at Dockets # 74 and # 72.


SO ORDERED.

Dated:  March 3, 2013
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

26